UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AHERN RENTALS, INC., a Nevada corporation,<br><br>Plaintiff,<br><br>v.<br><br>EQUIPMENTSHARE.COM, INC., a Delaware corporation, MATTHEW ALLEN, an individual; DERRICK TORRES, an individual, and DOES 1-100,<br><br>Defendants. | No. 2:19-cv-01788-MCE-KJN<br><br>**MEMORANDUM AND ORDER** |

Through the present lawsuit, Plaintiff Ahern Rentals, Inc. ("Ahern" or "Plaintiff") seeks redress from two of its former employees, Defendants Matthew Allen and Derrick Torres, and their current employer, Defendant EquipmentShare.com, Inc. ("ES") for allegedly misappropriating Ahern's trade secrets in contravention of both the Federal Defendant Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. §§ 1836, et seq., as well as its state law counterpart, California's Uniform Trade Secrets Act ("CUTSA"), California Civil Code § 3426.1(d). Various other state claims are asserted, including breach of contract, intentional interference with contract, intentional interference with prospective economic advantage, breaches of fiduciary duty/loyalty, and accounting, along with state

1

statutory claims for violation of California Business and Professions Code § 17200 and California Penal Code § 502.

Now before the Court are two Motions to Dismiss (ECF Nos. 22, 20) filed by ES and on behalf of Defendants Allen and Torres. Both assert that Plaintiff's lawsuit fails to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] As set forth below, those Motions are GRANTED.[2]

## BACKGROUND[3]

Plaintiff Ahern is an equipment rental, sales and service company that is headquartered in Nevada but operates on a nationwide basis. Defendant Allen was employed as a sales manager for Ahern between June 4, 2002, and June 3, 2019. Defendant Torres is also a former Ahern employee, having worked as a branch manager at one of Plaintiff's locations between July 11, 2013, and February 2, 2016. Both Allen and Torres ultimately went to work for ES, a rental company and purported direct competitor of Ahern's.

Plaintiff's Complaint alleges that while working for Ahern, both Allen and Torres were entrusted with Plaintiff's "confidential information." The Complaint very broadly defines that term as follows:

> "Such confidential and proprietary information includes non-public information of a technical, service, marketing, financial, or other business-type nature, and includes, **without limitation,** actual and prospective employee rosters, actual or prospective customer customer lists serviced by any particular employees, wage rates and commission rates for employees, internal policy and contracting procedures for employees, internal human resource policies and practices,

---

[1] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

[2] Having concluded that oral argument would not be of material assistance, both Motions were submitted on the briefs in accordance with E.D. Local Rule 230(g).

[3] Unless otherwise specified, this section is drawn, sometimes verbatim, from the allegations contained in Plaintiff's Complaint (ECF No. 1).

2

> identities of the names and contact information for specific decision-makers for particular projects, or specific employees with relationships to those decision-makers, pricing information for products and services, internal details and evaluations of staff, including strengths and weaknesses and records of customer communications (including logs); non-public financial and business information such as budgets, projection and financial data and reports; business techniques; strategic and marketing plans; and other information about Ahern employees, including contacts, contracts, qualifications, compensation and performance information (Ahern Confidential Information").”

Pl.'s Compl, ¶ 19 (emphasis added)

As Defendants point out, this all-encompassing definition, particularly when qualified as being without limitation, entails virtually any conceivable aspect of running a business. Beyond the above enumerated laundry list, and allegations that Plaintiff has "gone to great lengths" to protect its confidential information,[4] the Complaint includes just a couple of examples of Defendants' claimed malfeasance. First, the Complaint alleges that in the days preceding his departure from Ahern, Torres took "one or more internal business documents by emailing them to his personal email account and also utilized Ahern's network in violation of his agreements with Ahern to facilitate his recruitment and departure to a competitor company." Id. at ¶ 30. In addition, Allen is alleged to have gathered "contact and other internal information and detail" for "key Ahern employees," and also sent that information to his personal e-mail account. Id. at ¶¶ 31, 36. Aside from alleging that Torres and Allen used this "information" to "sow discord" and "raid" Ahern's employees by recruiting them to work for ES, and identifying one instance in that regard involving an Ahern employee in Las Vegas, Nevada, who was contacted by her "work cell phone number that is not available anywhere publicly" (see id. at ¶ 36), the Complaint cites no further details as to just what "trade secrets" were misappropriated and how they were used.

---

[4] By way of example, Plaintiff allegedly maintained a Trade Secret and Confidentiality Policy, as detailed in its Employee Handbook, which all employees, including Allen and Torres, were supposed to follow. Id. at ¶¶ 27-28. In addition, Torres is alleged to have entered into a "special agreement" regarding his access to Ahern's network under which he agreed not to use his security access for any improper purpose. Id. at ¶ 29.

3

Otherwise, the only specific allegation identified in the Complaint is that in the final days of his employment with Ahern, Torres "wrote a number of highly suspicious contracts to himself as a client" that provided discounts for Ahern products in violation of company policy. Id. at ¶ 34.

With respect to ES, the Complaint simply alleges that it "authorized or ratified Allen and Torres' wrongful conduct with respect to Ahern's trade secret information" for its own benefit and/or "aided and abetted" that conduct. Id. at ¶¶ 4, 52.

In now moving to dismiss, Defendants primarily allege that the Complaint fails to sufficiently identify what "trade secrets" have been misappropriated, let alone how their conduct damaged Ahern in such a way as to potentially trigger liability for the various causes of action alleged by Plaintiff, particularly since claims premised on fraud must be pleaded with particularity. Plaintiff, in response, alleges that the Complaint has enough detail to withstand any pleading challenge at this juncture.

## STANDARD

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations. However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal citations and quotations omitted). A court is not required to accept as true a "legal conclusion

couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")).

Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion, of entitlement to relief." Twombly, 550 U.S. at 555 n.3 (internal citations and quotations omitted). Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing Wright & Miller, supra, at 94, 95). A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570. If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend. Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to be considered when deciding whether to grant leave to amend). Not all of these factors merit equal weight. Rather, "the consideration of prejudice to the opposing party . . . carries the greatest weight." Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 185 (9th Cir. 1987)). Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." Intri-Plex Techs. v. Crest Group,

5

Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006, 1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the amendment of the complaint . . . constitutes an exercise in futility . . . .")).

## ANALYSIS

### A. Ahern's Trade Secret Claims

Federal law, as embodied by the DTSA, defines a trade secret very similarly to its California counterpart, CUTSA.[5] Under the DTSA, a trade secret includes information of various kinds, provided: (1) "the owner thereof has taken reasonable measures to keep such information secret" and (2) "the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3)(A)-(B). California's protection under CUTSA is essentially identical, defining trade secrets as including "a formula, pattern, compilation, program device, method, technique or process" that (1) "[d]erives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use"; and (2) "is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Cal. Civ. Code § 3426.1(d).

Fundamental to a claim for misappropriation of trade secrets are well-pleaded facts that allege the existence of a plausible trade secret. See Farmers Ins. Exchange v. Steels Ins.Agency, Inc., No. 2:13-cv-00784-MCE-DAD, 2013 WL 3872950 at *15-16 (E.D. Cal. 2013). Plaintiff nonetheless correctly points out that in establishing the existence of a trade secret, a party "need not spell out" its every detail. Autodesk, Inc. v.

---

[5] Indeed, the DTSA was largely modeled after the Uniform Trade Secret Act, which was adopted by California as CUTSA. See Deerpoint Grp., Inc. v. Agreginix, LLC, 345 F. Supp. 3d 1207, 1227 (E.D. Cal. 2018). Consequently, the definitions contained in DTSA and CUTSA are virtually the same. Id.

ZWCAD Software Co.,Ltd., No. 5:14-cv-01409 EJD, 2014 WL 2265479 at *5 (N.D. Cal. 2015). Still, in order to qualify for protection, the party must "describe the subject matter of the trade secret with sufficient particularity… to permit the defendant to ascertain at least the boundaries within which the secret lies." Pellerin v. Honeywell Int'l, Inc., 877 F. Supp. 2d 983, 988 (S.D. Cal. 2012) (quoting Diodes, Inc. v. Franzen, 260 Cal. App. 2d 244, 253 (1968)). Consequently, a pleading alleging trade secrets "must minimally provide reasonable notice of the issues . . . [and] reasonable guidance in ascertaining the scope of appropriate discovery." Id. at *6. Accordingly, while courts generally agree that disclosure of a trade secret in detail would circumvent the goal of guarding against public disclosure (Autodesk, 2015 WL 2265479 at *4), enough facts to apprise the defendant of what is being alleged must still be provided. Even if broad categories of descriptions may suffice at the pleadings stage it is axiomatic that some facts must still be pled to satisfy fundamental notice requirements. See Strategic Partners Inc. v. Vestagen Protective Techs. Inc., No. 2:16-CV-05900-RGF(PLAx), 2016 WL 10611186 at *4 (C.D. Cal. 2016).

In Strategic Partners, the alleged trade secret involved a specialty fabric that plaintiff alleged was based on "a formulation of durable fluid and oil repellency chemistry, originally a nanotechnology, and an antimicrobial along with a crosslinking agent." Id. at *5. This is a far cry from the all-encompassing business jargon identified by Ahern in this matter. Similarly, in Autodesk, source code was identified as comprising the trade secret, including "those portions of code that underlie the commands, interfaces and program files associated with the dozens of specific features that were wrongfully acquired and used" by the defendants. Autodesk, 2015 WL 2265479 at *5. This level of specificity is a stark contrast from Plaintiff's amorphous allegations. Given the lack of specificity in Plaintiff's Complaint, it fails to provide either any meaningful notice of what the trade secret might be or any reasonable guidance concerning the scope of appropriate discovery.

///

To the contrary, Ahern's list of matters in which it claims a trade secret is just the type of formulaic pleading, replete with "labels and conclusions" that the Supreme Court has rejected as insufficient to state a plausible claim for relief. See, e.g., Bell Atlantic Corp. v. Twombly, 550 U.S. at 555. Plaintiff has failed to sufficiently identify any "formula, pattern, compilation, program, device, method, technique or process," as required by CUTSA, that Defendants are alleged to have misappropriated. While Plaintiff argues that the laundry list of categories it enumerates in ¶ 19 of the Complaint suffices in that regard. The Court disagrees.

In defining a trade secret, as indicated above the Complaint paints with a brush so broad as to include virtually every component part of Plaintiff's business operation. The only factual details beyond generic complaints that Defendants Torres and Allen emailed various Ahern documents to their personal accounts rest with what appear to be a claim that Allen took an employee list that obtained phone numbers, including the work cell number of an Ahern employee in Las Vegas. Even that claim lacks any significant factual detail, however. The Complaint's reference to "personally identifying information and other personnel details" is too broad and vague to provide either fair notice or a plausible claim that any such information constitutes a trade secret. It belies credulity to argue, as Ahern apparently does here, that a work cell phone number, or even an employee roster, constitutes, absent extraordinary circumstances not contained within the Complaint, legally protected trade secrets. Even if they were, Plaintiff does not allege what steps it took to protect dissemination of such information, which is also a prerequisite for claiming a trade secret under both the DTSA and CUTSA. It would appear doubtful, for example, that Ahern prohibits employees from listing their work cell phone numbers on emails and business cards that are sent and/or distributed outside.

Plaintiff also appears to allege, without any factual allegations to support its claim, that it invests in its employees and that therefore, the act of contacting them to discuss employment with Defendants amounted to trade secret misappropriation. Plaintiff presents no facts to show that any list of employees was secret, let alone entitled to

8

protection as a trade secret. Significantly, any such argument would appear misplaced. "[A] stable of trained and talented at-will employees does not constitute an employer's trade secret." Metro Traffic Control, Inc. v. Shadow Traffic Network, 22 Cal. App. 4th 853, 862 (1994). Plaintiff cannot simply characterize a roster of its employees as a trade secret in order to prevent, as Ahern seems to do here, any potential poaching of its employees. California law and policy "has consistently affirmed… a settled legislative policy in favor of open competition and employee mobility." Edwards v. Arthur Andersen LLP, 44 Cal. 4th 937, 946 (2008). Absent some illegal act, "[t]he interests of the employee in his or her own mobility and betterment are deemed paramount to the competitive business interests of the employer." AMN Healthcare, Inc. v. Aya Healthcare Services, Inc., 28 Cal. App. 5th 923, 935-36 (2018).

Even aside from the existence of a trade secret itself, Plaintiff also failed to sufficiently allege "misappropriation" of the information at issue in order to state an actionable claim. Torres Mot. at 9. Misappropriation under both the DTSA and CUTSA, for purposes of the present matter, means acquisition of a trade secret through the use of "improper means" to acquire knowledge pertaining to the trade secret. Alternatively, if the trade secret is derived from or through a person who owed a duty to the entity seeking relief, the obligation is to maintain its secrecy or limit its use. Cal. Civ. Code § 3426.1 and 18 U.S.C. § 1839(5). "[A] threat of misappropriation cannot . . . be inferred from the fact that [an employee], upon voluntarily terminating his employment . . . immediately began working for a direct competitor and appears to be performing for his new employer the same or similar job duties he performed while employed by [his previous employer]." Pellerin, 877 F. Supp. 2d at 989 (citing Les Concierges, Inc. v. Robeson, No. C-09-1510 MMC, 2009 WL 1138561 at *2 (N.D. Cal. 2009). Indeed, the simple act of speaking to Ahern employees about working for ES does not in itself constitute misappropriation, since it is well-settled under California law that "a former employee who joins or establishes a competing enterprise may properly solicit business from those he served in his previous employment . . . ." Klamath-Orleans Lumber, Inc. v.

Miller, 876 Cal. App. 3d 458, 464 (1978).  Mere solicitation of another company's employees is not unlawful.  See, e.g., Buxbom v. Smith, 23 Cal. 2d 535, 547 (1944); Reeves v. Hanlon, 33 Cal. 4th 1140, 1151 (2004).  The allegations of Plaintiff's Complaint as it presently stands do little other than allege Defendants tried to "poach" Plaintiff's employees to work for ES through the use of an employer list obtained from Ahern.  Any other factual detail is lacking.  As Plaintiff itself concedes, both Allen and Torres were in "positions of managerial and financial importance" (see ECF No. 29, 3:2-3) and presumably had basic knowledge as to how Ahern operated absent any improper misappropriation.  With no concrete facts showing this was illegal, Plaintiff has failed to satisfy the misappropriation prong.

Nor is Plaintiff's argument that Defendants impermissibly want the Court to engage in "a mini trial on [misappropriation] before discovery may commence" any more persuasive.  See Social Apps, LLC v. Zynga, Inc., No. 4:11-CV-04910 YGR, 2012 WL 2203063 at * 3 (N.D. Cal. 2012).  Simply requiring Ahern to allege facts, as opposed to formulaic legal conclusions, that remotely rise to the level of a trade secret, including facts that support its claim of misappropriation, does not rise to the level of a mini trial.

### B. Plaintiff's Other State Law Claims

Plaintiff's claim that Defendants have misappropriated its trade secrets goes to the very foundation of its lawsuit.  While Plaintiff includes various other claims sounding in state law that derive, either directly or indirectly, from their trade secret claims, those claims overwhelmingly depend on the same nucleus of facts that support the trade secret allegations, and as indicated below that factual support is lacking in Plaintiff's present Complaint.  Moreover, many of the state law claims have allegations sounding in fraud,[6] and the fraud upon which Defendants stand accused has not been delineated with particularity as required by Rule 9(b).  The circumstances constituting the alleged fraud must "be specific enough to give defendants notice of the particular misconduct . . .

---

[6] The Complaint alleges, for example that "Defendants' wrongful acts were willful, oppressive, fraudulent and malicious" (at ¶¶ 68, 75), and that Defendants "conspired" to engage in the "unlawful, unfair and fraudulent acts and business practices as alleged in this Complaint." Id. at ¶¶ 101, 102.

10

so that they can defend against the charge and not just deny that they have done anything wrong." Bly-Magee v. California, 236 F.3d 1014, 1019 (9th Cir. 2001) (citing Neubronner v. Milken, 6 F.3d 666, 672 (9th Cir. 1993). Accordingly, "[a]verments of fraud must be accompanied by the who, what, when, where and how of the misconduct charged." Vess v. Ciba-Geigy Corp. USA., 317 F.3d 1097, 1106 (9th Cir. 2003).

Before these fundamental shortcomings are rectified, the Court need not rule on the other arguments offered for dismissal of Plaintiff's state law claims, since amendment may well profoundly affect the landscape upon which the claims rest. Defendants argue, for example, that many if not most of Plaintiff's state law claims are preempted, but until it is established whether Plaintiffs can maintain a viable trade secrets claim, that argument cannot really be addressed. Moreover, whether some of the claims asserted against Defendant Torres are time-barred depend on facts surrounding misappropriation that have not yet been adequately alleged, like just what Torres took and whether or not Ahern had taken reasonable steps to safeguard its confidentiality.

## CONCLUSION

Based on the foregoing, Defendants' Motions to Dismiss (ECF Nos. 20, 22) are GRANTED. Should Plaintiff choose to do so, it may file a First Amended Complaint not later than twenty (20) days after the date this Memorandum and Order is electronically filed. Failure to timely do so will result in the dismissal of this action, with prejudice and without further notice.

IT IS SO ORDERED.

Dated: June 26, 2020

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE